5 P.3d 1280 (2000)
STATE of Washington, Respondent,
v.
Samuel William WARFIELD, Appellant.
State of Washington, Respondent,
v.
Mark Todd Richardson, Appellant.
State of Washington, Respondent,
v.
Derek Dominic Gonzales, Appellant.
Nos. 23951-5-II, 23952-3-II, 23953-1-II.
Court of Appeals of Washington, Division 2.
August 18, 2000.
Lisa Elizabeth Tabbut, Cowlitz County Pros. Office, James Jay Stonier, Cowlitz County Prosecutor, Kelso, for Respondent.
Eleanor Marie Couto, John A. Hays (Court Appointed), Longview, Charles Henry Buckley, Baum, Etengoff & Buckley (Court Appointed), Vancouver, for Appellants.
*1281 HUNT, A.C.J.
Samuel William Warfield, Mark Todd Richardson, and Derek Dominic Gonzales appeal their convictions for unlawful imprisonment. They argue that the unlawful imprisonment statute, RCW 9A.40.040, is unconstitutionally vague and that their convictions should have been dismissed because the State failed to prove an essential element of the crimethat they knowingly acted without lawful authority when they restrained a man for whom an Arizona arrest warrant was outstanding and checked with local police before returning him to an Arizona jail. We hold that the statutory definition of unlawful imprisonment, to "knowingly restrain," causes the adverb "knowingly" to modify all components of the statutory definition of "restrain," including the "without lawful authority" component. Accordingly, we reverse.

FACTS
The State charged Samuel Warfield, Mark Richardson, and Derek Gonzales with one count of unlawful imprisonment (Count I) and one count of fourth degree assault (Count II). The assault charged was later merged into the unlawful imprisonment charge. Trial was conducted on the following stipulated facts:
1. On April 19, 1997, Defendants Samuel Warfield, Mark Richardson, and Derek Gonzales drove to Kelso, Cowlitz County, Washington for the purpose of arresting Mark DeBolt on a 1987 UIBC[[1]] misdemeanor warrant out of Maricopa County, Arizona.
2. On that date, there was a valid warrant out of Maricopa County for Mark DeBolt's arrest. A certified copy of this warrant is attached hereto, and incorporated as part of this Finding of Fact.
3. On April 19, 1997, defendants Samuel Warfield, Mark Richardson, and Derek Gonzales arrived in Kelso and waited for Mr. DeBolt at the Target Store parking lot. When Mr. DeBolt arrived, defendants Samuel Warfield, Mark Richardson, and Derek Gonzales physically grabbed Mr. DeBolt and took him to their van, where they substantially restrained his movement without his consent while waiting for the police to arrive. The substantial restraint continued until the police arrived. The physical contact was offensive to Mr. DeBolt.
4. Within 5 to 10 minutes, Kelso Police arrived and interviewed everyone present, including defendants Samuel Warfield, Mark Richardson, and Derek Gonzales.
5. Following the interviews, the Kelso Police reviewed the warrant that Mr. Gonzales had. The Kelso Police then told Mr. DeBolt and the three defendants that the warrant appeared valid. At that point, the Kelso Police allowed defendants Samuel Warfield, Mark Richardson, and Derek Gonzales to retake custody of Mr. DeBolt under the Arizona warrant for the purpose of taking Mr. DeBolt to Arizona.
6. Defendants Samuel Warfield, Mark Richardson, and Derek Gonzales then drove Mr. DeBolt directly to the Mojave County Jail at Kingsman, Arizona, where they turned custody of Mr. DeBolt over to the Mojave County Sheriff.
7. The Mojave County jail at Kingsman, Arizona was the nearest jail in Arizona to which the defendants could take Mr. DeBolt.
8. None of the three defendants has a surety relationship with a bail bondsman. All three defendants are private citizens. None of the three defendants is a law enforcement officer.
9. All three of the defendants had a good faith belief that they had legal authority to arrest Mr. DeBolt on the Arizona warrant, take him into custody, and transport him to jail in Arizona.
10. Mark DeBolt had never been admitted to bail in Arizona. The warrant had been issued upon his failure to appear on a criminal summons.....
The trial court convicted all three as charged and sentenced them within the standard range. The trial court denied their motions to dismiss, concluding that as a matter of law: (1) The defendants had no lawful *1282 authority to restrain DeBolt; (2) the Arizona misdemeanor arrest warrant, standing alone, had no lawful effect in Washington; (3) "[t]hat the defendants had a good faith belief in the validity of the Arizona misdemeanor warrant in Washington [was] not a defense"; and (4) the unlawful restraint statute was not void for vagueness.
We consolidated the defendants' three appeals.

ANALYSIS
Courts should construe statutes to avoid absurd results. Young v. Estate of Snell, 134 Wash.2d 267, 282, 948 P.2d 1291 (1997); State v. Day, 96 Wash.2d 646, 648, 638 P.2d 546 (1981); State v. Chester, 82 Wash.App. 422, 427, 918 P.2d 514 (1996). In interpreting statutes, we give effect to the object and intent of the Legislature. Ravsten v. Department of Labor & Indus., 108 Wash.2d 143, 150, 736 P.2d 265 (1987); Herzog v. Department of Labor & Indus., 40 Wash.App. 20, 25, 696 P.2d 1247 (1985).[2] Where the meaning of a statute is clear on its face, we assume that the Legislature "means exactly what it says"[3] and we give effect to the plain language without regard to rules of statutory construction. Allan v. Department of Labor & Indus., 66 Wash.App. 415, 418, 832 P.2d 489 (1992).
Here, neither the plain language of the unlawful imprisonment statute nor the legislative history supports the State's contention that the Legislature intended "knowingly" to modify only the restricting-another's-movements component. Because we find the meaning of RCW 9A.40.040 clear on its face, and supported by legislative history, we need not reach the other issues,[4] including those relating to the statute's constitutionality.

I. PLAIN LANGUAGE OF THE STATUTE
A person commits the crime of unlawful imprisonment when "he knowingly restrains another person." RCW 9A.40.040. To "restrain" means
to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception....
RCW 9A.40.010(1).
To convict defendants of the crime of unlawful imprisonment, the State had to prove beyond a reasonable doubt that they "knowingly" restrained DeBolt. RCW 9A.40.040(1). To prove that they "restrained" Debolt, the State had to prove that they restricted DeBolt's movements (a) without consent and (b) without legal authority, in a manner which interfered substantially with his liberty. RCW 9A.40.010(1).
Here, it is undisputed that defendants restricted DeBolt without his consent and without legal authority, in a manner which interfered substantially with his liberty. It is also clear that defendants knew that DeBolt did not consent to his capture, and that they did not know that they were restraining DeBolt without legal authority. Rather, they believed that they were acting lawfully when they restrained DeBolt, especially after they summoned the Kelso police, showed them the warrant, and the police allowed defendants to retain custody of DeBolt and remove him to Arizona. That defendants' belief in the lawfulness of their authority to arrest DeBolt was erroneous, does not transform their actions into the crime of unlawful imprisonment.
In RCW 9A.40.040, which establishes the crime of unlawful imprisonment, the adverb *1283 "knowingly" modifies the verb "restrain." For kidnapping and unlawful imprisonment crimes, the Legislature crafted its own definition of "restrain" in RCW 9A.40.010(1). This definition has four primary components: (1) restricting another's movements; (2) without that person's consent; (3) without legal authority; and (4) in a manner that substantially interferes with that person's liberty. Because the Legislature has seen fit to fold all four components into the definition of "restrain," then all four components are equally modified by the adverb "knowingly," which modifies "restrain" in the statutory definition of unlawful imprisonment.

II. LEGISLATIVE HISTORY
The plain language of the statute is consistent with its legislative history. The Legislature enacted RCW 9A.40.010(1) and .040 in 1975 as part of a comprehensive new criminal code, now known as the Washington Criminal Code. RCW 9A.04.010; Laws of 1975, 1st Ex.Sess., ch. 260 § 9A.04.010. When the Legislature enacted the Washington Criminal Code, "it had before it a precursor code known colloquially as the Orange Code and officially as the proposed Revised Washington Criminal Code...." State v. Thomson, 71 Wash.App. 634, 643, 861 P.2d 492 (1993).[5] The Model Penal Code (MPC)[6] was the predecessor to the Orange Code. Orange Code at 164. The elements of "unlawful imprisonment" and the definition of "restraint" in the current code and the Orange Code are the same, and they are similar to their counterparts in the MPC.[7] Thus, the MPC sheds light on whether the Washington Legislature intended that the adverb "knowingly"[8] modify the phrase "without legal authority."[9]
The MPC provides that a person commits one of two unlawful imprisonment offenses (§ 212.2 felony or § 212.3 misdemeanor) by "knowingly restrain[ing] another unlawfully." 2 AMERICAN LAW INSTITUTE, MODEL PENAL CODE AND COMMENTARIES, Sections 212.2, .3, at 237, 244, (1980)[hereinafter ALI]. One comment states, "Both offenses require knowledge of the unlawful nature of the restraint."[10] ALI, Section 212.2, Comment at 208. Similarly, another comment states:
Section 212.2 [felony unlawful imprisonment] requires proof that the accused acted knowingly. Thus, he must have been aware that he was restraining his victim, [and] that the restraint was unlawful....
ALI, Section 212.2, Comment at 242. This comment further explains the rationale for requiring that the unlawful nature of the restraint be "knowing":
[W]ith respect to the unlawful character of the restraint, a knowledge requirement seems proper if only to guard against convicting peace officers of felonious restraint because of defects in their arresting authority. For these reasons, Section 212.2 expressly requires a minimum culpability of knowledge with respect to each element of the offense.
ALI, Section 212.2, Comment at 243 (footnote omitted). Thus, as illuminated by the above comments to the MPC, from which our code was derived, the legislative history of Washington's statute is both consistent with and supportive of the plain language of the unlawful imprisonment statute as explained in Part I of our analysis.[11]
*1284 We acknowledge that usually, "ignorance of the law is no excuse." State v. Reed, 84 Wash.App. 379, 384, 928 P.2d 469 (1997) (citing State v. Patterson, 37 Wash. App. 275, 282, 679 P.2d 416 (1984)). Here, however, knowledge of the law is a statutory element of the crime of unlawful imprisonment, without proof of which, defendants' convictions cannot stand. It is uncontroverted that defendants believed they were acting lawfully because they had a warrant for DeBolt's arrest, and the police, whom they summoned, appeared to ratify the lawfulness of their actions.[12] Therefore, we reverse and dismiss defendants' unlawful imprisonment convictions.
MORGAN, J., and BRIDGEWATER, J., concur.
NOTES
[1] Unlawfully Issuing a Bad Check.
[2] See also State v. Chapman, 140 Wash.2d 436, 450, 998 P.2d 282 (2000) (citing State v. Chester, 133 Wash.2d 15, 21, 940 P.2d 1374 (1997)).
[3] Morgan v. Johnson, 137 Wash.2d 887, 891-92, 976 P.2d 619 (1999); Chapman, 140 Wash.2d at 450, 998 P.2d 282 (citing Rettkowski v. Department of Ecology, 128 Wash.2d 508, 515, 910 P.2d 462 (1996); Sidis v. Brodie/Dohrmann, Inc., 117 Wash.2d 325, 329, 815 P.2d 781 (1991)).
[4] Although a statute may be deemed ambiguous if susceptible to two or more reasonable interpretations, we are not obliged to find an ambiguity by imagining alternative interpretations. State v. Tili, 139 Wash.2d 107, 115, 985 P.2d 365 (1999) (citing State v. Hahn, 83 Wash.App. 825, 831, 924 P.2d 392 (1996)).
[5] See State v. Smith, 72 Wash.App. 237, 241-42, 864 P.2d 406 (1993); Thomson, 71 Wash.App. at 643-44, 861 P.2d 492; State v. Simmons, 30 Wash.App. 432, 436, n. 3, 635 P.2d 745 (1981); State v. Thompson, 88 Wash.2d 13, 26, n. 5, 558 P.2d 202 (1977) (Utter, J., dissenting).
[6] The American Law Institute adopted the Model Penal Code in 1962. 1 AMERICAN LAW INSTITUTE, MODEL PENAL CODE AND COMMENTARIES, at xii (1980) [hereinafter ALI].
[7] See comment to Orange Code at page 164: "Section 9A.40.040, [unlawful imprisonment], together with the restraint definition of § 9A.40.005(1), is similar to MPC § 212.3...."
[8] RCW 9A.40.040.
[9] RCW 9A.40.010(1).
[10] The comments to § 212.2 were originally included in "Tentative Draft No. 11 at 21" in 1960. ALI, Section 212.2, History note at 237.
[11] State v. Parker, 97 Wash.2d 737, 742, 649 P.2d 637 (1982) does not address the issue before us. Nor does State v. Price, 33 Wash.App. 472, 475, 655 P.2d 1191 (1982). We acknowledge that our opinion may cast doubt on the wording of WPIC 39.16, which appears to omit "knowingly" from element 3, "without legal authority"; but that issue is not before us.
[12] See State v. Galisia, 63 Wash.App. 833, 838, 822 P.2d 303 (1992).