FILED
COURT OF APPEALS
DIVISION II

2014 JUL 29 AM 11: 38

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44186-1-II |
| Respondent, | |
| v. | |
| DAVID L. DARLING, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — David L. Darling appeals his convictions of unlawful imprisonment, felony harassment, and felony violation of a no-contact order (all with domestic violence enhancements) and his sentence. He claims that the information charging him with unlawful imprisonment failed to include all essential elements of the offense, that all three convictions were the same criminal conduct, and that his attorney provided ineffective assistance in conceding that one of his offenses was not the same criminal conduct as the other two. In a statement of additional grounds, Darling challenges the imposition of community custody, the admission of evidence, and the trial court's instructions to the jury. He also claims he was denied his right to effective assistance of counsel on multiple grounds. We find no error, and affirm.

## FACTS

On August 26, 2012, at about 11:30 p.m., private security guard Thomas Pelham heard a woman screaming. When he illuminated the nearby hillside with his headlights, he saw Darling

pulling Julie Barnes down the hill. She was screaming, "Stop, stop, you're killing me." Report of Proceedings (RP) at 226. He described Barnes as hysterical, crying, yelling, and trying to pull herself back up the hill away from Darling. When Pelham stepped from the car he saw Darling release Barnes, and she fell to the ground into the fetal position. Pelham called the police, who took Darling into custody.

While City of Vancouver Police Officer Gerardo Gutierrez was taking a statement from Pelham, Darling began yelling angrily at Barnes and stated that he was going to get her. Barnes told Officer Gutierrez that she was homeless and four months pregnant with Darling's child, and that she was sleeping on the embankment when Darling woke her up. She told Officer Gutierrez that Darling was angry and was yelling at her. When she tried to leave, Darling pushed her down, punched her in the face, chest, and belly, and threatened to kill her. Barnes later prepared a written statement describing these events.

Officer Gutierrez also spoke with Darling, and during that conversation Darling yelled several times at Barnes that he was going to kill her. He also yelled that the police could not keep him in jail forever and that when he got out, he was going to "beat her ass" and "kill her." RP at 184. While Officer Gutierrez was speaking with the police dispatcher to verify that Barnes had a restraining order against Darling, the dispatcher recorded Darling yelling that he was going to beat Barnes when he was released.

The State charged Darling by amended information with unlawful imprisonment (domestic violence), felony harassment (death threats) (domestic violence), felony domestic violence court order violation, and interference with the reporting of domestic violence (domestic violence).

2

Darling testified at trial that he and Barnes got into an argument about his drinking and that Barnes started swinging her arms wildly and hitting him. He stated that she lost her balance and fell while running at him, and he caught her and let her down gently when the security officer spotted them with his lights. Barnes testified at trial and denied that Darling had punched her or pulled her down the hill. To counter Barnes's trial testimony, the State offered, and the trial court admitted, her written statement.

The jury found Darling guilty of unlawful imprisonment, felony harassment, and felony violation of a domestic violence court order. It found him not guilty of interfering with the reporting of domestic violence. And it found that Darling committed these offenses against a family or household member.

At sentencing, the State argued that all three convictions were separate conduct. Darling argued that two of the offenses were the same criminal conduct, but stated that he was not arguing that all three offenses constituted the same criminal conduct. The sentencing court found that the unlawful imprisonment and court order violation amounted to the same criminal conduct but that the felony harassment was not the same criminal conduct. The court imposed standard range sentences on the three convictions and imposed 12 months of community custody on the unlawful imprisonment conviction.

Darling appeals his conviction and sentence.

ANALYSIS

A.     ADEQUACY OF THE INFORMATION

Darling claims that the information failed to articulate all of the essential elements of unlawful imprisonment, and therefore he was denied his constitutional right to proper notice.

Specifically, he claims that the information needed to include the four definitions set out in *State v. Warfield*, 103 Wn. App. 152, 157, 5 P.3d 1280 (2000). We disagree.

1. Standard of Review

An information must include all essential elements of the offense charged. *State v. Brown*, 169 Wn.2d 195, 197, 234 P.3d 212 (2010). Essential elements are those the State must necessarily prove to establish the criminal act charged. *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003). The primary goal of the essential elements rule is to give notice to an accused of the nature of the crime that he must be prepared to defend against. *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991) (citing 2 W. LaFave & J. Israel, Criminal Procedure § 19.2, at 446 (1984); 1 C. Wright, Federal Practice § 125, at 365 (2d ed. 1982)).

When the adequacy of the information is challenged for the first time after verdict or on appeal, we ask two questions: (1) whether the necessary facts appear in any form, or by fair construction, can they be found in the charging document; and, if so, (2) whether the defendant can show that he nonetheless was actually prejudiced by the inartful language that caused a lack of notice. *Kjorsvik*, 117 Wn.2d at 105-06.

2. Elements of Unlawful Imprisonment

The amended information charged Darling with unlawful imprisonment as follows:

> That he, DAVID LAWRENCE DARLING, in the County of Clark, State of Washington, on or about and between August 26, 2012, and August 27, 2012, did knowingly restrain another person, to-wit: Julie Ann Barnes; contrary to Revised Code of Washington 9A.40.040 and 9A.40.10(6).

Clerk's Papers at 7. RCW 9A.40.040 describes unlawful imprisonment: "(1) A person is guilty of unlawful imprisonment if he or she knowingly restrains another person." Former RCW 9A.40.010(6) (2011) defines restrain as:

4

> "Restrain" means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he or she is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him or her has not acquiesced.

In *Warfield*, 103 Wn. App. at 157, we noted that the statutory definition had four primary components:

> (1) restricting another's movements; (2) without that person's consent; (3) without legal authority; and (4) in a manner that substantially interferes with that person's liberty. Because the Legislature has seen fit to fold all four components into the definition of "restrain," then all four components are equally modified by the adverb "knowingly," which modifies "restrain" in the statutory definition of unlawful imprisonment.

Our Supreme Court recently addressed this issue and held that the information charging unlawful imprisonment need include only the statutory elements of unlawful imprisonment, as was done here. The Court specifically rejected the claim that the four components set out in *Warfield* required a more detailed information. *State v. Johnson,* ___ Wn.2d ___, 325 P.3d 135, 138 (2014). Accordingly, Darling's claim fails.

B.    SAME CRIMINAL CONDUCT

Darling argues that the sentencing court erred in finding that the felony harassment charge was not the same criminal conduct as the unlawful imprisonment and felony court order violation. He claims that the sentencing court erred in finding that the harassment conviction was based on his post-arrest statements when the jury could also have found him guilty based on his pre-arrest statements. We disagree because regardless of the basis of the conviction, the harassment charge involved a different objective intent than the other two charges.

5

Crimes constitute the "same criminal conduct" for sentencing purposes when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." Former RCW 9.94A.589(1)(a) (2002). We will not disturb a trial court's determination of same criminal conduct unless the sentencing court abuses its discretion or misapplies the law. *State v. Graciano*, 176 Wn.2d 531, 536, 295 P.3d 219, 222 (2013).

Darling argues that because the jury verdict did not state whether he was found guilty based on pre-arrest or post-arrest death threats, it was legally improper for the trial court to find that the felony harassment offense did not occur at the same time and place as the unlawful imprisonment and felony violation of a court order. He relies on *State v. Kier*, 164 Wn.2d 798, 811, 194 P.3d 212 (2008), which held that courts must interpret ambiguous verdicts in the defendant's favor. He argues the sentencing court misapplied the law by failing to interpret the ambiguous jury verdict as based on the pre-arrest death threat rather than the post-arrest death threat.

However, the distinction between pre-arrest and post-arrest threats is immaterial. Although we agree with Darling that the three offenses may have occurred at the same time and place in light of the ambiguous jury verdict, they involved different objective intents. Harassment requires proof that the defendant knowingly threatened his victim. Unlawful imprisonment requires proof that the defendant knowingly restrained his victim. A court order violation requires proof that the defendant knowingly violated a court order. An intent to threaten someone is not the same as an intent to restrain that person or an intent to violate a court order. In addition, the harassment crime did not further the others. While the trial court did not articulate this basis for finding the crimes separate, the burden is still on Darling to show same

6

criminal conduct. *Graciano*, 176 Wn.2d at 539-40. He fails to do so, and therefore his claim fails.

C. INEFFECTIVE ASSISTANCE OF COUNSEL

Darling argues that trial counsel's concession that only two of the offenses were same criminal conduct denied him his right to effective assistance of counsel. To prevail on an ineffective assistance of counsel claim, the defendant must show not only that defense counsel's representation was deficient, but also that the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34.

Because we have held that the harassment conviction did not arise from the same criminal conduct as the other two convictions, Darling cannot show that defense counsel's concession resulted in prejudice.

D. STATEMENT OF ADDITIONAL GROUNDS

In a statement of additional grounds, Darling raises seven assertions of error. We reject them all.

1. Community Custody

Darling asserts that the trial court erred in imposing community custody on the unlawful imprisonment conviction because the trial court found that it amounted to the same criminal conduct as count three (violation of a court order). He argues that because the sentencing court imposed the statutory maximum sentence on count three, his sentence effectively exceeds the statutory maximum when combined with community custody.

7

But a finding of same criminal conduct simply means that the defendant's crimes are counted as one for purposes of calculating his offender score. It does not mean he committed only one offense. And RCW 9.94A.701(3)(a) requires the sentencing court to impose twelve months of community custody for any crime against a person. Unlawful imprisonment is such a crime. RCW 9.94A.411(2)(a). The trial court did not impose a sentence longer than the statutory maximum and therefore did not err.

### 2. Admission of *Smith* Affidavit

Darling asserts that the trial court erred in admitting Barnes's affidavit under *State v. Smith*, 97 Wn.2d 856, 861-63, 651 P.2d 207 (1982), because the prosecution could not use it to impeach its own witness and Barnes was not given an opportunity to confirm the allegations on the stand. However, a *Smith* affidavit is admissible as substantive evidence if the State establishes the four foundational requirements under ER 801(d)(1)(i). *See Smith*, 97 Wn.2d at 861-63 (holding that ER 801(d)(1)(i) permits admission of a trial witness's prior inconsistent statement as substantive evidence when that statement was made as a written complaint under oath subject to penalty of perjury to investigating police officers, subject to a reliability analysis).

Here the trial court found that the requirements for the admission of Barnes's affidavit were met. Accordingly, the trial court did not err in admitting the affidavit.

### 3. Admission of Prior Offenses

Darling asserts that the trial court erred in admitting evidence of his prior harassment and assault convictions because those convictions were based on *Newton* pleas.[1] He argues that this was improper because a conviction by *Newton* plea cannot be admitted in any other action. He

---

[1] *State v. Newton*, 87 Wn.2d 363, 366, 552 P.2d 682 (1976).

provides no authority for this claim and we know of none. Darling's convictions qualified for admissibility and the trial court did not err in so ruling.

4.    Transcription of Jury Instructions

Darling complains that he should have been given a transcription of the trial court's instructions to the jury in order to better present his claims to this court. But the record does not show that Darling filed a motion either on appeal or in the trial court for an additional report of proceedings, nor does Darling show that the written instructions are inadequate to present his claims. *See State v. Giles*, 148 Wn.2d 449, 450, 60 P.3d 1208 (2003) (indigent defendant entitled to means to properly present his arguments on appeal). Accordingly, this assertion fails.

5.    Felony Harassment Instruction

Darling asserts that the trial court improperly instructed the jury on the harassment count because it included the optional term "felony." He claims that this allowed the jury to improperly consider punishment in assessing his culpability. He correctly notes that the Washington Pattern Jury Instruction Committee's comment indicates that the word "felony" should be included in the instruction only if the defendant is also charged with gross misdemeanor harassment. Comment, 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 36.07.02, at 582 (3d ed. 2008) (WPIC). The comment states that because juries are routinely instructed that they should not consider potential punishment during their deliberations, referring to the crime as a felony, "to some extent is inconsistent with this mandate." Comment, WPIC 36.07.02 at 582.

44186-1-II

But Darling did not object to this instruction at trial. Absent a showing of manifest constitutional error, he may not raise this claim on appeal. RAP 2.5(a)(3); *State v. Edwards*, 171 Wn. App. 379, 387, 294 P.3d 708 (2012).

6. Felony Violation of Court Order

Darling asserts that the trial court's to-convict instruction for the court order violation also used the word "felony" and therefore suffers from the same flaw as his felony harassment instruction. But Darling did not object to this instruction at trial either, and absent a showing of manifest constitutional error he may not raise this claim on appeal. RAP 2.5(a)(3).

7. Effective Assistance of Trial Counsel

Darling claims multiple instances of ineffective assistance of counsel. As we noted above, a defendant alleging the denial of his right to effective assistance of counsel must show both that counsel's performance was objectively unreasonable and that this failing prejudiced his right to a fair trial. *Grier*, 171 Wn.2d at 32-33. All but one of Darling's claims involve defense counsel's failure to object. Counsel's decisions regarding whether and when to object "fall firmly within the category of strategic or tactical decisions." *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007). The failure to object constitutes counsel's incompetence justifying reversal only in egregious circumstances on testimony central to the State's case. *Johnston*, 143 Wn. App. at 19.

First, Darling asserts that trial counsel should have objected when the State questioned Barnes about whether she still loved Darling. But this was a reasonable inquiry allowing the jury to assess Barnes's credibility. The trial court would have overruled any objection, and therefore defense counsel's failure to object did not prejudice Darling.

10

Second, Darling asserts that trial counsel should have objected to the prosecutor asking Barnes leading questions about Darling's cell phone. He argues that there was no evidence that he had grabbed his cell phone and therefore the prosecutor's question assumed facts not in evidence. But Barnes testified that Darling's cell phone was lying on a blanket, that she tried to grab it, but he picked up the phone and put it in his pocket. The prosecutor did not improperly lead the witness or assume facts not in evidence. The trial court would have overruled any objection, and therefore defense counsel's failure to object did not prejudice Darling.

Third, Darling asserts that trial counsel should have objected to the prosecutor's alleged "badgering" of Barnes about whether Darling had hit her. But this line of questioning was proper. The prosecutor simply was clarifying what Barnes meant when she said that Darling had never hit her. The trial court would have overruled any objection, and therefore defense counsel's failure to object did not prejudice Darling.

Fourth, Darling asserts that trial counsel should have objected when the prosecutor asked Barnes if the defendant had ever expressed jealousy before that night. But this was a reasonable question in light of Barnes's earlier direct testimony in which she testified that Darling had accused her of doing sexual favors for another man. The trial court would have overruled any objection, and therefore defense counsel's failure to object did not prejudice Darling.

Fifth, Darling asserts that trial counsel should have objected to the prosecutor's question of whether Barnes hoped to keep her relationship with Darling. But this was a reasonable inquiry that allowed the jury to assess Barnes's credibility. The trial court would have overruled such an objection, and therefore defense counsel's failure to object did not prejudice Darling.

11

Sixth, Darling asserts that trial counsel should have objected when the prosecutor asked Barnes if the redness on Darling's face that evening could be from alcohol consumption rather than from being punched in the face. But Barnes could testify that alcohol was a likely cause of the redness in Darling's face because they had been in an ongoing relationship, she had been upset in the past with his alcohol consumption, and she testified that she was upset that evening as well. The trial court would have overruled any objection, and therefore defense counsel's failure to object did not prejudice Darling.

Seventh, Darling asserts that trial counsel should have objected when the prosecutor asked Officer Gutierrez about whether Barnes was shaking when Darling was yelling at her. But these questions were proper as the State had to show that Barnes was in reasonable fear that Darling would carry out his threats to kill her. Explaining the physical effects of his taunting and rage on her was not improper and did not assume facts not in evidence because Officer Gutierrez had just testified about Barnes's physical behavior. The trial court would have overruled any objection, and therefore defense counsel's failure to object did not prejudice Darling.

Eighth, Darling asserts that trial counsel should have presented evidence favorable to him. Specifically, he claims that trial counsel should have transcribed an interview with Brad Morrow and offered it as evidence. But this argument involves facts outside the record and cannot be considered on appeal. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (reviewing court will not consider matters outside the record on appeal).

44186-1-II

In summary, Darling fails to demonstrate that defense counsel's conduct denied him his right to effective assistance of counsel. We reject his ineffective assistance of counsel claims.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
HUNT, J.

_____
LEE, J.

13