IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40614-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANDREW RUSSELL CORDLE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — In 2022, Andrew Cordle disciplined his girlfriend's 13-year-old son by placing him in handcuffs and leg shackles and keeping him in a closet for three to four days except for trips to the bathroom and meals. After a bench trial, the court found him guilty of unlawful imprisonment. On appeal, Cordle challenges the sufficiency of the evidence to sustain his conviction. We affirm.

FACTS

In 2019, Andrew Cordle and Ms. E. began dating, and Cordle became a parental figure to her children, including J.E., Z.E., and T.E.[1]

In July 2022, Deputy James Sandall and Deputy Sifuentes were on patrol duty for the Yakima County Sheriff's Office when they were called to assist Child Protective Services (CPS) with a home visit at T.E.'s residence. During the visit, Cordle admitted to securing T.E. in handcuffs behind his back, putting him in leg shackles, and keeping T. E. in a closet area in the laundry room to simulate a jail cell. T.E. was 13 years old at the time.

Cordle told Deputy Sandall that the punishment occurred about a week before and was because T.E. broke into his mother's room and took some money and candy. Cordle offered to demonstrate his handcuffing techniques on T.E. and proceeded to show Deputy Sandall his handcuffing procedure. During the demonstration T.E. was compliant, seemed to be happy, and did not appear to be in any pain. Deputy Sandall noticed that the handcuffs were applied properly so they would not tighten involuntarily and cause pinching. Cordle explained he used leg restraints because T.E. was able to get the handcuffs under his legs to the front of his body and escape. Deputy Sandall asked to see

---

[1] All three children are minors and initials are used to protect their privacy.

the closet and Cordle agreed, allowing the deputies to take some pictures of the closet

area and laundry room. Deputy Sifuentes also took pictures of T.E.'s wrists and ankles.

There were red marks on T.E.'s wrists and one of his ankles. Neither CPS nor law

enforcement took custody of T.E. on that day nor was Cordle arrested.

In January 2023, the State charged Cordle with second degree assault of J.E.,

fourth degree assault of Z.E., and unlawful imprisonment of T.E. Cordle later waived his

right to a jury trial.

At the bench trial, the State presented testimony from T.E., two of his younger

brothers, and some of the investigating officers. Cordle and Ms. E. testified in Cordle's

defense.

During opening, defense counsel asserted the physical discipline of T.E. was

lawful because it was reasonable and moderate and inflicted by a person designated by

the parent for purposes of restraining or correcting the child. Defense stated that the

court must "determine whether the force used was used objectively and was reasonable

and moderate." 1 Rep. of Proc. (RP) (July 18, 2004) at 26. Defense counsel also argued

"there was discipline that my client was authorized to impose upon the boys. . . . So we

will show that it was moderate." 1 RP (July 18, 2004) at 27-28.

Cordle and Ms. E. characterized her children as lying frequently, not taking

accountability for their actions, and stealing. Ms. E. said that they stole all kinds of

things: money, clothing, food, toys, tools, paper clips, and sticky notes.  Because the

children kept stealing food, Cordle and Ms. E. had to lock up the food.  A latch was

placed on the refrigerator because the kids would leave the door open and the food would

spoil; the sweet treats were locked in a cupboard.

When the children misbehaved, their discipline took various forms.  Ms. E.

disciplined the boys with timeouts on their bed or depriving them of their favorite things.

Cordle had them write out sentences, imposed timeouts on their bed, calisthenics,

standing in the corner, and wall sits.  Cordle said the severity of the punishments

increased because the boys began stealing various things and physically harming the farm

animals.

During T.E.'s testimony, he described getting in trouble for not doing his chores

and for stealing food.  Generally, his punishments for misbehavior included spanking,

getting hit on the knuckles with a bamboo stick, getting grabbed by the ear, standing in

the corner, doing wall sits, jumping jacks, and pushups.

When asked about being put in handcuffs and shackles, T.E. first testified he got

in trouble for wanting to play with the chickens on the property; however, later he said he

was punished for stealing a Reese's Peanut Butter Cup and the punishment was to

demonstrate that thieves go to jail.  In response, Cordle handcuffed T.E.'s wrists behind

his back and put him in the closet area in the laundry room.  When T.E. was able to bring

his wrists to the front, Cordle added the leg shackles. T.E. testified he was not trying to escape but was trying to make himself more comfortable. While the handcuffing and shackling did not physically hurt him, it was uncomfortable because his hands were behind his back. T.E. was given a little food and when he needed to use the restroom he would shout for someone to escort him to the bathroom. T.E. believed he was in the closet for three to four days.

T.E. was unsure of whether his mother gave Cordle permission to handcuff him but he testified she just sat there and did not interfere or object. However, she never placed him in the handcuffs. T.E. never consented to being placed in the closet.

T.E.'s brothers testified as to the other charges against Cordle. One brother testified that the stealing was because they did not get a lot of food. His other brother testified the kids would get one or two meals a day, and if they were good enough, three. After the children testified, the State dismissed the fourth degree assault charge. The court stated that the crux of the case was whether T.E.'s discipline was reasonable and moderate.

Ms. E. confirmed she gave Cordle authority to discipline the children, including physical discipline. However, Ms. E. believed physical punishment was only appropriate if the children were aggressive. Ms. E. testified handcuffs were put on T.E. because he had threatened to kill himself and one of his brothers. Ms. E. watched Cordle put the

handcuffs and leg shackles on T.E. but denied T.E. was shackled or put in the closet. Ms. E. testified that T.E. was put in shackles because she was worried about his brother's safety if she got distracted and could not keep an eye on T.E. She did not believe T.E. was in any pain. Ms. E. denied restricting their food as punishments.

Cordle testified Ms. E. gave him permission to discipline the boys. On the day in question, Cordle testified he put T.E. in handcuffs just once, in response to T.E.'s threat of self-harm and harming his brother. After T.E. pulled his hands from the back to the front and threatened to run away, Cordle put him in leg shackles. Cordle denied putting T.E. in the closet. Rather, he testified he put T.E. in the pantry and T.E. put himself in the closet. Cordle also denied disciplining the children by making them skip meals. Cordle denied showing Deputy Sandall the closet and telling him he used it to simulate a jail cell.

The trial court dismissed the second degree assault of a child charge relating to J.E. but found Cordle guilty of unlawful imprisonment of T.E. The trial court found Cordle's discipline of T.E. was not reasonable or moderate. The trial court also believed it was not credible that the discipline was imposed because of T.E.'s threats to kill but rather the discipline was in response to taking of the candy to demonstrate jail as a consequence for stealing.

6

The trial court entered the following pertinent findings of fact and conclusions of

law:

1. On July 23, 2022, Deputy Sandall responded to a call for service at 2004 S. 41st Avenue in Yakima County, State of Washington.
2. Deputy Sandall was called to assist Child Protective Services (CPS).
3. Deputy Sifuentes, a trainee at the time, was working with Deputy Sandall that day.
4. At that address, Deputy Sandall made contact with CPS workers Ava Lee and Jose Garcia Gonzalez. He also made contact with [Ms. E.], Andrew Cordle, and T.E.
5. Both CPS and Deputy Sandall spoke to Mr. Cordle regarding an incident with T.E.
6. Mr. Cordle told CPS and Deputy Sandall that he uses handcuffing as a form of discipline on T.E. Mr. Cordle told Deputy Sandall that he secures him in handcuffs behind his back as well as shackling his legs and keeps him in a confined closet area in the laundry room to simulate a jail cell.
7. Mr. Cordle showed Deputy Sandall and Deputy Sifuentes the laundry room and closet, as well as the handcuffs and leg shackles.
8. Deputy Sifuentes photographed the closet, handcuffs, leg shackles, and T.E.'s wrists and ankles.
9. T.E. was handcuffed, leg shackled, and placed in a closet for three to four days by Mr. Cordle sometime in June or July of 2022.
. . . .
12. Mr. Cordle is a significant other of [Ms. E.] and father to her daughter. Mr. Cordle lived with [Ms. E.] and all her children for a period of time.
13. At the time of their testimony the children were the following ages: T.E.—15years old, J.B.—12 years old, and Z.B.—14 years old.
. . . .

1. The court finds that the defendant is not guilty of Second Degree Assault of a Child under RCW 9A.36.130(1)(a) and 9A.36.021(1)(g).
2. The court concludes beyond a reasonable doubt that the defendant is guilty of Unlawful Imprisonment under RCW 9A.40.040.
3. The defendant knowingly restrained the movements of T.E. in a manner that substantially interfered with his liberty.
4. This restraint was without T.E.'s consent.
5. The defendant knew that the restraint was without T.E.'s consent.
6. The restraint was without legal authority.
7. The purported discipline of handcuffs, leg irons, and being placed in a closet for three days was not reasonable and not moderate, even if it was done with T.E.'s mother's consent.

Clerks Papers at 231-33. Cordle appeals to this court.

## ANALYSIS

### SUFFICIENCY OF THE EVIDENCE

Cordle asserts the State failed to present sufficient evidence to sustain his conviction. We disagree.

Due process requires that the State prove each element of a charged offense beyond a reasonable doubt. *State v. Chacon*, 192 Wn.2d 545, 549, 431 P.3d 477 (2018). We review the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Following a bench trial, "[t]he conviction will be upheld if any rational fact finder could have found the essential elements beyond a reasonable doubt." *State v. Roberts*, 5 Wn.3d 222, 237, 572 P.3d 1191 (2025). "In claiming insufficient evidence, the defendant admits the truth of the State's evidence and all reasonable

8

inferences that can be drawn from it." *Id*. "Inferences are drawn in the State's favor." *Id*. "Circumstantial evidence and direct evidence are equally reliable when determining the sufficiency of the evidence." *Id.*

To establish the crime of unlawful imprisonment, the State must prove that the defendant "knowingly restrain[ed] another person." RCW 9A.40.040(1). The word "restrain" has four components: "(1) restricting another's movements; (2) without that person's consent; (3) without legal authority; and (4) in a manner that substantially interferes with that person's liberty." *State v. Warfield*, 103 Wn. App. 152, 157, 5 P.3d 1280 (2000).

In *Warfield*, the court held that "knowingly" modified all four components of "restrain," including "without legal authority." *Id.* at 156. Thus, the State was required to prove beyond a reasonable doubt that the defendants knew they were acting without legal authority.

However, the holding in *Warfield* was later limited by our Supreme Court "to those unique cases where the defendant had a good faith belief that he or she had legal authority to imprison a person." *State v. Johnson*, 180 Wn.2d 295, 304, 325 P.3d 135 (2014). Therefore, the "defendant's knowledge that they lacked legal authority is not a necessary element of unlawful imprisonment unless the defendant claims they had a good

faith belief they were acting with lawful authority."[2] *State v. Dillon*, 12 Wn. App. 2d

133, 142-43, 456 P.3d 1199 (2020).

We now address whether the State presented sufficient evidence to sustain

Cordle's conviction. Cordle challenges the second and third restraint components. We

address both components together.

*Legal authority and consent*

Cordle argues he acted with legal authority because T.E.'s mother consented to

him disciplining her son. We disagree that T.E.'s mother could authorize Cordle to

inflict excessive, immoderate, or unreasonable discipline.

Parents have the right to raise their children without the State's interference

including reasonable discipline not harmful to the child's health, welfare, and safety.

*State v. Kinchen*, 92 Wn. App. 442, 450, 963 P.2d 928 (1998). However, parents can lose

their legal authority to restrain their children and be guilty of unlawful imprisonment

"where the restrictions on the children's movements, viewed objectively, are excessive,

---

[2] For the first time on appeal, Cordle argues he had a "good faith belief" that his discipline of T.E. was within the permissible scope of parental authority. At trial, Cordle's argument was that the discipline was reasonable and moderate under the circumstances and inflicted by a person designated by the parent to discipline.

We generally decline to review claims of error not raised in the trial court. Had the issue of "good faith belief" been raised at trial, the State might have presented evidence on that issue and the trial court could have entered an appropriate finding.

immoderate, or unreasonable." *Id.* at 444. Similarly, a parent can authorize a third party to use force on a child to restrain or correct them; however, the correction "is unlawful unless it is reasonable and moderate." Former RCW 9A.16.100 (1986). Thus, whether Cordle had consent from Ms. E. to discipline T.E. depends on whether handcuffing, shackling, and placing T.E. in a closet for three or four days with occasional bathroom and meal breaks is reasonable and moderate.

Cordle contends T.E.'s discipline was reasonable and moderate because T.E. threatened to kill his brother. This argument is inconsistent with the trial court's finding, corroborated both by T.E.'s testimony that he was disciplined for taking some candy and Cordle's statements to Deputy Sandall in July 2022.

Cordle cites RCW 9A.40.010(6)(a) to support an alternative argument—that the mother's consent absolves him of unlawful imprisonment. RCW 9A.40.010(6)(a) provides in relevant part: "Restraint is 'without consent' if it is accomplished by . . . any means . . . if [the victim] is a child less than sixteen years old . . . and if the parent . . . has not acquiesced."

Cordle's argument is a logical fallacy. Simply because the law defines "*without* consent" for children under 16 as *without* the parent's consent, this does not mean the law defines "*with* consent" for children under 16 as *with* the parent's consent. As explained

11

above, a parent cannot legally give consent to another person to unreasonably or immoderately restrain their own child.

Here, given the length and manner of T.E.'s punishment for a minor offense, a rational fact finder could have found beyond a reasonable doubt that the punishment was not reasonable and moderate.[3]

We conclude that the State presented sufficient evidence to sustain Cordle's conviction for unlawful imprisonment of T.E.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____     _____
Staab, J.                                                      Murphy, J.

_____

[3] Cordle, citing RCW 26.44.015(1), argues that parental discipline is lawful if it is "not injurious to a child's health, welfare, or safety," and the State failed to prove that his discipline of T.E. injured him in this fashion. This argument was not raised below, so we will not consider it for the first time on appeal. *See* RAP 2.5(a). Had the argument been raised at trial, the State would have had the opportunity to refute it, and the trial court could have entered related findings.