**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**


The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 5, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 5, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| STATE OF WASHINGTON, | NO. 99310-6 |
| Respondent, |  |
| v. | EN BANC |
| RONALD HARRISON SNIDER, |  |
| Petitioner. | Filed: May 5, 2022 |

STEPHENS, J.—Washington law requires most people convicted of sex offenses to register with their county sheriff and to update their registration whenever they change or lose their residence. RCW 9A.44.132 makes it a crime to knowingly fail to comply with those requirements. Ronald Snider, who was convicted of third degree rape in 2003, failed to update his registration with the Pierce County sheriff when he moved out of a residential treatment facility in mid-2017. This was at least the fifth time Snider had failed to register since 2003. Snider pleaded guilty, as he did the last time he was charged with failure to register.

Snider now seeks to withdraw his plea. He argues that his plea was not knowing, voluntary, and intelligent because the trial court misinformed him about the knowledge element of failure to register. The Court of Appeals rejected this

argument, concluding the trial court's descriptions of the knowledge element were accurate and Snider's plea was constitutionally valid. We agree with the Court of Appeals and affirm Snider's conviction.

FACTS AND PROCEDURAL HISTORY

In August 2016, Snider pleaded guilty to an earlier failure to register charge. As a condition of that plea, Snider agreed to engage in mental health treatment and live at a residential treatment facility in Pierce County called the Place of Restoration. Snider moved in and properly registered at that address. But in June 2017, the Department of Corrections learned that Snider was no longer living at the Place of Restoration. Around the same time, the United States Department of Veterans Affairs (VA) modified Snider's medications. Because Snider had changed his residence without updating his registration with the Pierce County sheriff, a warrant was issued for his arrest.

The State charged Snider with failure to register in September 2017. Snider was not arrested until April 2018—10 months after he had moved out of the Place of Restoration—and he still had not updated his registration with the Pierce County sheriff. The State amended the charge accordingly. Clerk's Papers (CP) at 4.

Snider decided to represent himself at trial with the assistance of standby counsel. On the week trial was originally scheduled to begin, Snider requested a 60-day continuance so he could gather more evidence to prepare his defense. The trial

court granted Snider's request but noted it would not grant any further continuances. Trial was ultimately set for the first week of October 2018.

Snider planned to present a diminished capacity defense, which allows a defendant to argue that they are not guilty because they have "a mental disorder . . . [that] impaired [their] ability to form the culpable mental state to commit the crime charged." *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001) (citing *State v. Ellis*, 136 Wn.2d 498, 521, 963 P.2d 843 (1998)). But the defense of "diminished capacity requires an expert diagnosis of a mental disorder and expert opinion testimony connecting the mental disorder to the defendant's inability to form a culpable mental state in a particular case." *State v. Clark*, 187 Wn.2d 641, 651, 389 P.3d 462 (2017) (citing *Atsbeha*, 142 Wn.2d at 918). On the day trial was set to begin, Snider still had not produced the expert testimony necessary to establish his diminished capacity defense.

Snider and the State each filed pretrial motions related to that lack of evidence. Snider asked for another continuance, and the State asked the trial court to bar Snider from presenting a diminished capacity defense to the jury. Three interrelated conversations followed. In each, the trial court described the knowledge element of failure to register in slightly different ways. Snider argues some of the trial court's statements affirmatively misinformed him about that element.

*State v. Snider*, No. 99310-6

Snider's Motion for a Continuance

First, Snider argued for another continuance because he had not yet received documents from the VA relating to his mental health diagnoses and related medications, which he claimed would show that he lacked "the ability to have the knowledge of certain issues of responsibility in my life." Verbatim Report of Proceedings (Oct. 2, 2018) (VRP) at 7-9. The trial court told Snider:

> *The only thing you need to know about in this case is that you had a prior responsibility to report.* That's it. That's the only knowing thing that's an issue in this case at all, *unless you're trying to argue something else I'm missing.* . . . And I don't—what you've told me so far [about the VA records] doesn't seem to go to that specific issue.

VRP at 9 (emphasis added).

Snider replied that "in reference to the medical records, there's a history here with registration," suggesting his medical records would show that "there was not just one but multiple mishaps with the medications and just knowing how to take care of [him]self" that had caused not only this failure to register but at least some of Snider's prior failures to register. VRP at 9, 11. Snider also argued he could call lay witnesses to testify about "how distorted [Snider be]came" because of these disruptions to his medication. VRP at 11.

But, the trial court explained, the VA records would not be enough to establish Snider's diminished capacity defense because those records would not contain

> the expert testimony [that] must logically and reasonably connect the defendant's alleged mental condition and assert an inability to perform [the]

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

mental state required for the crime charged . . . . which is *knowledge of the responsibility to register.* That is the only thing at issue in this case.

VRP at 13 (emphasis added). Because Snider had no plans to use this further continuance to obtain the expert testimony he needed for his diminished capacity defense, the trial court denied Snider's motion: "Case will go to trial today." VRP at 14.

Snider asked if that ruling meant he could not present a diminished capacity defense, explaining that "[i]f I'm not able to pursue the diminished capacity defense, then I'm not going to be able to show a proper defense. I'm not prepared." VRP at 16. The trial court replied that it had not yet ruled on the State's motion to bar Snider from presenting that defense and that its only ruling so far was to deny Snider's motion for a continuance.

The trial court then asked Snider how he wished to plead. Snider pleaded not guilty, and the trial court turned to the State's motions in limine.

The State's Motions in Limine

The State moved, among other things, to bar Snider from presenting a diminished capacity defense because he did not have the required expert testimony. Snider responded that he planned to call lay witnesses—including his son and sister—who could testify that he had mental health conditions and struggled with his recent change in medication. The trial court explained the issue was not whether

Snider had mental health conditions but whether those conditions "impact[ed

Snider's] *ability to know whether or not* [*he was*] *required to register.*"  VRP at 21

(emphasis added).  The trial court reminded Snider that testimony from lay witnesses

was not enough to establish a diminished capacity defense; he needed an expert to

testify.

Snider then seemed to say that he understood he was required to update his

registration after leaving the Place of Restoration, but he had failed to do so because

his mental health conditions left him overwhelmed by the instability caused by his

change in address, change in medication, and other factors:

> It wasn't a change of—it wasn't the knowledge of registration.  It was the change of address and the disruption in the stability that caused that [failure to register] to happen.
>
> So it wasn't while I was—I completely understand the registration factors.  But the problem with it was it was the ability to not have stability in the address changes, and the disruption that was taking place was so much of the outside interference taking place by the medications as well as the responsibilities to report to [Department of Corrections].
>
> All those elements were taking place at the same time.  The overbearing of the issues that were taking place at the [P]lace of [R]estoration . . . allowed me to not even be able to have the ability to function correctly. . . . When it comes out to a responsibility to either personal hygiene, to requirements to drive, to walk, to talk, to get on a bus.

VRP at 21-23.  But Snider had no expert who could testify that a "particular mental

disorder . . . interfere[d] with [Snider]'s *ability to know he has a responsibility to*

*report*," so the trial court found Snider's proffered evidence did not establish a

6

diminished capacity defense. VRP at 25 (emphasis added). However, the trial court

clarified, the State still had the burden to prove the knowledge element of failure to

register.

When Snider again insisted his VA records would establish his diminished

capacity defense because they contained the opinions of medical experts in the form

of his diagnoses, the trial court responded:

> I think you may be missing the point. I'm going to make it one more
> time and then we're going to move on.
>
> There are two parts to this. Expert, yes. But the expert that
> would provide particular testimony that's relevant in this case, not that you
> *have* mental health problems; that's not the problem here, that's not the issue
> we're getting into. *It's whether or not a specific mental health issue, specific
> mental health condition interfered with your—create*[d] *the inability for you
> to form the proper mental state, which is knowledge of the duty to report.*
> That's it. That's it. That you have other mental health issues is not relevant
> [to the defense of diminished capacity].
>
> What I don't have yet at all is any evidence, any even offer of evidence
> that [any] . . . experts would provide testimony that you did not know because
> of a mental inability, mental condition you had the inability to form *the
> mental state to know that you had a duty to register.* And that's what's
> missing here.

VRP at 28 (emphasis added). Accordingly, the trial court granted the State's motion

to bar Snider from presenting a diminished capacity defense.

The trial court next explained the basic ground rules of trial, including how

Snider could introduce evidence, question witnesses, conduct voir dire, confer with

standby counsel, and more. Because Snider had earlier indicated he was only

prepared to present a diminished capacity defense—which was now off the table—

7

*State v. Snider*, No. 99310-6

the trial court suggested Snider confer with his standby counsel about the state of

plea negotiations. Snider confirmed he would like to do so, and the trial court gave

them 15 minutes to confer before the jury pool was called to the courtroom.

When the court came back on the record, Snider had decided to change his

plea from not guilty to guilty. The State agreed to recommend a sentence of 48

months with credit for time served, 72 months below the statutory maximum.

Snider's Plea Colloquy

Finally, before accepting Snider's guilty plea, the trial court engaged Snider

in a colloquy to determine whether his plea was knowing, voluntary, and intelligent.

During that colloquy, Snider confirmed that he understood the charge against him

and had no questions about any of the elements of the crime of failure to register.

The trial court then asked about Snider's written statement of guilt:

> Paragraph 11 has a sentence attributed to you that says, ["]Between
> July 6, 2017, and April 1st, 2018, in Pierce County, Washington, I *knowingly*
> *failed to comply with the sex offender registration law.* . . .["]

VRP at 61. Snider verified the truth of that statement and accepted attribution.

Crucially, Snider's statement of guilt was mostly typed and originally omitted

the word "knowingly." But Snider, assisted by standby counsel, amended the plea

statement by hand to add "knowingly," among other details, and initialed the

changes to confirm those words were his. Snider signed the amended statement,

which the trial court read aloud during the plea colloquy.

8

*State v. Snider*, No. 99310-6

The trial court accepted Snider's plea and at a subsequent hearing sentenced him to 48 months with credit for time served. Snider did not ask to withdraw his plea at the time of sentencing. But Snider promptly appealed and argued his plea was constitutionally invalid because the trial court had affirmatively misinformed him of the elements of failure to register.

The Court of Appeals affirmed Snider's conviction in an unpublished opinion, concluding the trial court's descriptions of the knowledge element did not misinform Snider and therefore did not affect the validity of Snider's plea. *State v. Snider*, No. 53114-3-II, (Wash. Ct. App. Nov. 10, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2053114-3-II%20Unpublished%Opinion.pdf. We granted Snider's petition for review.

ANALYSIS

Snider argues his plea is constitutionally invalid because the trial court did not explain every fact the State would need to establish to prove that he "knowingly failed to comply" with the requirements of Washington's sex offender registration law. RCW 9A.44.132(1). Specifically, Snider claims the State would have had to prove he acted with knowledge that (1) he was subject to those sex offender registration requirements, (2) some triggering event had taken place that required him to update his registration, and (3) his address was not currently up to date with

9

the sheriff's office. Because the trial court did not explain all three, Snider argues, his plea was not knowing, voluntary, and intelligent.

We disagree. There is a difference between the elements of a crime and the facts the State must establish to prove those elements. A trial court must ensure a defendant understands the nature of a crime and the essential elements before accepting a guilty plea, but an otherwise valid guilty plea is not rendered illegitimate because the trial court does not detail every fact that could be relevant to every element. Here, the trial court accurately described the substance of the knowledge element of failure to register. The totality of circumstances shows Snider was properly informed of the elements and nature of the crime when he pleaded guilty. We hold Snider's guilty plea was constitutionally valid and affirm his conviction.

> Courts Determine Whether a Plea Was Knowing, Voluntary, and Intelligent Based on the Totality of the Circumstances

We review the constitutional adequacy of a defendant's plea de novo. *State v. Buckman*, 190 Wn.2d 51, 57, 409 P.3d 193 (2018). "Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances." *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996) (citing *Wood v. Morris*, 87 Wn.2d 501, 506, 554 P.2d 1032 (1976)).

"[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most

universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S. Ct. 572, 85 L. Ed. 859 (1941)). "[T]his requires that the defendant be aware of the basic elements of the offense charged." *State v. Chervenell*, 99 Wn.2d 309, 318, 662 P.2d 836 (1983). "At a minimum, 'the defendant would need to be aware of the acts and the requisite state of mind in which they must be performed to constitute a crime.'" *In re Pers. Restraint of Mendoza Montoya*, 109 Wn.2d 270, 278, 744 P.2d 340 (1987) (quoting *In re Pers. Restraint of Keene*, 95 Wn.2d 203, 207, 622 P.2d 360 (1980)).

When a defendant pleads guilty after receiving a charging document that accurately describes the elements of the offense charged, their plea is presumed to be knowing, voluntary, and intelligent. *Bousley*, 523 U.S. at 618 (citing *Henderson v. Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976)); *State v. Bao Sheng Zhao*, 157 Wn.2d 188, 202, 137 P.3d 835 (2006) (quoting *In re Pers. Restraint of Hews*, 108 Wn.2d 579, 596, 741 P.2d 983 (1987)). That presumption can be overcome by subsequent misinformation from the trial court about the elements of the charged crime. *Bousley*, 523 U.S. at 618-19.

Here, Snider acknowledges that his charging document accurately describes the elements of failure to register, so we begin with the presumption of validity. He claims his plea was nevertheless invalid because the trial court misinformed him

11

about the knowledge element of failure to register because it did not detail the various facts the State would have to prove under that element. The State counters that the trial court accurately described the knowledge element and that Snider's arguments are not borne out by the record. We agree with the State.

A. The Trial Court Correctly Described the Knowledge Element of Failure To Register under RCW 9A.44.132(1)

Washington's sex offender registration law has two relevant parts. The first, RCW 9A.44.130, explains the registration requirements for those convicted of sex offenses. The law establishes different requirements for offenders in different circumstances, including offenders in state custody, offenders under federal jurisdiction, offenders who are convicted but not confined, offenders who are new or temporary Washington residents, offenders who lack a fixed residence, offenders who live or work in another state, and more. RCW 9A.44.130(4)(a). Each requirement under RCW 9A.44.130 arises in specific situations, so whether a particular sex offender is required to register depends on their particular circumstances. Relevant here, the law requires sex offenders to update their registration whenever they change or lose their residence. RCW 9A.44.130(5), (6).

The second part of Washington's sex offender registration law, RCW 9A.44.132(1), makes it a crime for a person convicted of a felony sex offense to "knowingly fail[] to comply with any of the requirements of RCW 9A.44.130." A

person acts "knowingly" when they are aware of facts, circumstances, or results described by a statute defining an offense, or when they have information that would lead a reasonable person in the same situation to believe that such facts exist. RCW 9A.08.010(b). For a person to knowingly fail to comply with Washington's sex offender registration statute, they must be aware that their particular circumstances give rise to a particular requirement under RCW 9A.44.130. Said another way, the knowledge element of failure to register requires the State to prove that a sex offender was aware that one or more of RCW 9A.44.130's registration requirements applied to their circumstances when they failed to comply with those requirements.[1]

The trial court properly articulated this knowledge element in its conversations with Snider. To be sure, the trial court used slightly different phrases to describe the knowledge that would satisfy the element: (1) knowledge that "you had a prior responsibility to report," (2) "knowledge of the responsibility to register," (3) knowledge of "whether or not you're required to register," (4) "the defendant's ability to know he has a responsibility to report," and (5) "knowledge of the duty to

---

[1] The law anticipates that some felony sex offenders, like Snider, will claim they cannot be guilty of failure to register because they do not know that one of RCW 9A.44.130's requirements applies to their circumstances. In such cases, an "arrest on charges of failure to register . . . constitutes actual notice of [an offender's] duty to register," and the law requires offenders to "register within three business days following actual notice of the duty through arrest." RCW 9A.44.130(4)(c). "Failure to register as required under this subsection (4)(c) constitutes grounds for filing another charge of failing to register." *Id.*

13

report," VRP at 9, 13, 21, 25, 28. Although the trial court's specific words varied, the meaning remained the same: Snider's failure to comply with the requirements of RCW 9A.44.130 was knowing if Snider knew he had a responsibility to report when he moved away from the Place of Restoration. The trial court's statements accurately informed Snider of the elements and nature of the crime charged and therefore did not undermine the validity of Snider's plea.

Snider's suggestion that the sex offender registration statute includes multiple knowledge elements is unpersuasive. While Snider correctly points out that the term "knowingly" often requires the State to show knowledge of multiple distinct facts, he fails to acknowledge that those distinct facts are not separate knowledge elements of the crimes at issue. For example, "[t]o convict defendants of the crime of unlawful imprisonment, the State ha[s] to prove beyond a reasonable doubt that they 'knowingly' restrained" the victim. *State v. Warfield*, 103 Wn. App. 152, 157, 5 P.3d 1280 (2000) (citing RCW 9A.40.040(1)). The statutory definition of "restraint" "has four primary components: (1) restricting another's movements; (2) without that person's consent; (3) without legal authority; and (4) in a manner that substantially interferes with that person's liberty." *Id.* (citing RCW 9A.40.010(1)). But those four components are not distinct elements of the crime of unlawful imprisonment. Instead, "all four components [fit] into the definition of 'restrain,'" *id.*, so they are

14

part of the single element that the accused "knowingly restrains another person," RCW 9A.40.040(1).

In accord with this reasoning, this court has upheld guilty pleas to unlawful imprisonment where the charging document did not include that four-part definition of restraint. *See State v. Johnson*, 180 Wn.2d 295, 302-03, 325 P.3d 135 (2014) ("The State need not include definitions of elements in the information. It was enough that the State alleged all of the essential elements found in the unlawful imprisonment statute . . . . We have never held that the information must also include definitions of essential elements.", "[T]he definition of 'restrain' defines and limits the scope of the essential elements. That does not make the definition itself an essential element that must be included in the information. In this case, the information included all of the essential elements, and therefore we hold that it was constitutionally sufficient.").

The same reasoning applies to the knowledge element here. The constitutional mandate requiring that a person be properly informed of the elements of the crime charged does not require the trial court to exhaustively detail every fact relevant under each element of that crime. That the trial court did not explicitly inform Snider that the knowledge element of failure to register necessarily includes knowledge of the specific circumstance giving rise to the responsibility to register under RCW 9A.44.130 does not render Snider's plea constitutionally invalid. Snider

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

was properly informed of the essential elements of failure to register, and he repeatedly confirmed that he understood the nature of the charge.

Snider's suggestion that the trial court essentially talked him out of a correct understanding of the knowledge element is not supported by the record. Contrary to Snider's representations, the trial court did not tell Snider that his defense theory was wrong because he misunderstood the knowledge element. Rather, the trial court granted the State's motion in limine barring Snider from presenting a diminished capacity defense because Snider had not made a threshold showing, supported by expert testimony, that a specific mental health condition impaired his ability to form the requisite mental state of knowledge. *See Atsbeha*, 142 Wn.2d at 914 ("To maintain a diminished capacity defense, a defendant must produce expert testimony demonstrating that a mental disorder, not amounting to insanity, impaired the defendant's ability to form the culpable mental state to commit the crime charged."). Snider could not proceed with his theory of the case because he had not presented the necessary evidence to establish his defense, not because the trial court talked him out of it.

B. The Totality of the Circumstances Demonstrates Snider's Plea Was Knowing, Voluntary, and Intelligent

"Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances." *Branch*, 129 Wn.2d at 642 (citing

16

*Wood*, 87 Wn.2d at 506). When the relevant documents include accurate advisements, we presume the plea is valid, subject to a showing that the defendant was affirmatively misled. *Bousley*, 523 U.S. at 618-19. Here, the totality of the circumstances shows that Snider's plea was constitutionally valid.

First, the amended information correctly described the knowledge element, giving rise to a presumption that Snider's plea was made knowingly, voluntarily, and intelligently. CP at 4; *Bousley*, 523 U.S. at 618. Second, during the colloquy on Snider's motion for a continuance, Snider acknowledged—and the trial court confirmed—the amended information's articulation of that element was accurate. Third, as explained above, the trial court's statements throughout the pretrial proceedings correctly described the knowledge element. Even if the trial court's statements during the motion in limine hearing confused Snider, those statements cannot be read in isolation and must be considered in the full context of all that was communicated. As noted, other statements and the clear advisements during the plea colloquy were adequate to correct any potential misunderstanding.

Snider's handwritten addition of the word "knowingly" to his typed statement of guilt provides a particularly persuasive indicator that the knowledge element was accurately conveyed. Without that addition, Snider's statement of guilt would not have been complete. That Snider took affirmative action to complete his statement of guilt by adding that reference to his mental state strongly suggests Snider

17

understood and acknowledged the requisite mental state for the crime of failure to register. Snider signed the amended statement of guilt and accepted attribution.

Finally, before accepting the guilty plea, the trial court engaged Snider in an extended colloquy to confirm his understanding of the charge against him. The trial court accurately recited the knowledge element, reading directly from Snider's statement of guilt. That colloquy also covered the various consequences of Snider's plea, including the waiver of various rights at trial and on appeal, the applicable standard range sentence, and more. Snider confirmed that he understood the charge to which he was pleading and the consequences of that plea, and that he was entering the plea agreement freely and voluntarily.

Together, all these circumstances establish that Snider was presented with accurate information about the elements and nature of the crime of failure to register, that he understood that information, and that his plea was therefore made knowingly, voluntarily, and intelligently. *Branch*, 129 Wn.2d at 642.

## CONCLUSION

Ronald Snider's guilty plea was constitutionally valid. The trial court accurately described the knowledge element of failure to register and did not affirmatively misinform Snider. The totality of the circumstances demonstrates that his plea was knowing, voluntary, and intelligent. Accordingly, we affirm the Court of Appeals and uphold Snider's conviction.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Snider*, No. 99310-6

Stephens, J.

WE CONCUR:

González, C.J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 99310-6

WHITENER, J. (dissenting)—Under RCW 9A.44.132(1), "A person commits the crime of failure to register as a sex offender if the person has a duty to register under RCW 9A.44.130 for a felony sex offense and *knowingly fails to comply* with any of the requirements of RCW 9A.44.130." (Emphasis added.) At the time of the alleged failure to register in this case, Ronald Snider, a veteran with significant mental illness, had a disruption in his medications, which uprooted his ability to function. Snider, representing himself, sought to present a diminished capacity defense, arguing that he could not *knowingly* fail to comply with the registration requirements because his mental illness caused him to not be able to knowingly function in society in any way. Although he knew of his duty to report generally, Snider argued that "there's no way that I could possibly have been willingly or knowingly be[en] a partaker of any part of society." Verbatim Report of Proceedings (Oct. 2, 2018) (VRP) at 8.

The judge responded, "The only thing you need to know about in this case is that you had a prior responsibility to report. That's it. That's the only knowing thing that's an issue in this case at all, unless you're trying to argue something else I'm

1

*State v. Snider*, No. 99310-6
Whitener, J. (dissenting)

missing." *Id*. at 9. The judge ultimately denied Snider's request to present a diminished capacity defense.

During pretrial motions the judge in this case told Snider at least five times, in at least five different ways, that the knowledge requirement of "knowingly fail[ed] to comply" *only* applied to knowledge of the duty to register and that the only issue in the present case was whether Snider knew he had a duty to report. *See* VRP at 9, 13, 20-21, 24-25, 28, 29. Therefore, according to the judge, because Snider knew generally that he had a duty to register and he had left his residence, there was nothing else the State needed to prove. The majority holds that this was a correct statement of the law and, therefore, that Snider's guilty plea was knowing, voluntary, and intelligent, thus affirming his conviction.

I disagree. The State must prove *more* than just that Snider knew of the duty to register to prove that he "knowingly failed to comply." The State must also prove that Snider *knowingly* did not follow through with the requirements. I would hold that repeatedly informing Snider that knowledge applied only to the duty to register constitutes affirmative misinformation by the trial judge. The repeated references to incorrect statements of the law were so pervasive that they overcome the presumption that a plea is constitutionally valid when the charging document correctly sets forth the elements of the crime. Further, although the plea colloquy, conducted minutes after pretrial discussions concluded, correctly stated the elements

2

*State v. Snider*, No. 99310-6
Whitener, J. (dissenting)

of the crime, it was not sufficient to correct the pervasive misinformation the court provided to Snider. Accordingly, I would reverse the Court of Appeals in this case and hold that Snider's plea was not knowing, voluntary, and intelligent, and would vacate his conviction. For those reasons, I respectfully dissent.

ANALYSIS

"'Due process requires that a guilty plea may be accepted only upon a showing the accused understands the nature of the charge and enters the plea intelligently and voluntarily.'" *State v. Buckman*, 190 Wn.2d 51, 59, 409 P.3d 193 (2018) (quoting *State v. A.N.J.*, 168 Wn.2d 91, 117, 225 P.3d 956 (2010)). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S. Ct. 572, 85 L. Ed. 859 (1941)). When the record shows that neither the defendant, nor the defendant's counsel, nor the court "understood the essential elements of the crime with which" the defendant was charged, the guilty plea is "constitutionally invalid." *Id.* at 618-19. This rebuts the presumption created by the charging document that the defendant understood the charges against them. *See id.* Further, "an accused must not only be informed of the requisite elements of the crime charged, but also must

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Snider*, No. 99310-6
Whitener, J. (dissenting)

understand that his conduct satisfies those elements." *In re Pers. Restraint of Hews*,

99 Wn.2d 80, 88, 660 P.2d 263 (1983).

I. The trial court judge affirmatively and repeatedly misinformed Snider of the knowledge requirement by limiting it to knowledge of the duty to register and registration requirements

At issue in this case is the meaning of the element "knowingly fails to comply"

with the registration requirements. *See* RCW 9A.44.132(1). The majority concludes,

> For a person to knowingly fail to comply with Washington's sex offender registration statute, they must be aware that their *particular circumstances* give rise to a particular requirement under RCW 9A.44.130. Said another way, the knowledge element of failure to register requires the State to prove that a sex offender *was aware* that one or more of RCW 9A.44.130's registration requirements applied to their circumstances *when* they failed to comply with those requirements.

Majority at 13 (emphasis added). I disagree with this conclusion to the extent that it

is incomplete. While I agree that the knowledge element requires the State to prove

that a defendant was aware that one or more of the registration requirements apply

in a certain case, the *failure to comply* must also be *knowing*.

I also disagree with the majority's conclusion that "[t]he trial court properly

articulated this knowledge element in its conversations with Snider." *Id.* To come

to this conclusion, the majority identifies specific phrases that the trial court

articulated on a few occasions, none of which I believe expressed to Snider that the

knowledge requirement applies to the failure to comply with the registration

requirements as indicated in the plain language of the statute. *See id.* In addition, the

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

few occasions the trial judge "properly articulated this knowledge element in its conversations with Snider" fails to overcome the pervasive misinformation the trial judge provided Snider. Id.

Representing himself, Snider, in his attempts to obtain a diminished capacity defense, correctly articulated the knowledge element in this case multiple times. Snider's primary argument was that he could not form the requisite mens rea, knowledge, about anything at all *at the time* of the alleged crime because of the disruption in his life due to his mental illness. Accordingly, he sought to present a diminished capacity defense to show he could not *knowingly* fail to comply with the registration requirements.

"To maintain a diminished capacity defense, a defendant must produce expert testimony demonstrating that a mental disorder, not amounting to insanity, impaired the defendant's ability to form the culpable mental state to commit the crime charged." *State v. Atsbeha*, 142 Wn.2d 904, 921, 16 P.3d 626 (2001). Snider sought a two-week continuance to obtain records from the Department of Veterans Affairs (VA) so he could identify expert witnesses who could testify to his inability, at the time of the incident, to form the requisite mens rea, knowing. He indicated that the records would show

> the relevance to the changing of the medications and the behavior that
> took place from the changing of the medications and how critical it was
> that each medication caused a certain behavior attribute to either fail
> me or—it's in those lines that what they do is they just show how

5

unstable the V.A. and I were doing through trial and error as we were dealing with the medications and having myself be able to become a functional stable citizen of the community.

VRP at 7. When questioned how this would relate to diminished capacity, Snider, representing himself, argued that he wished to demonstrate how unstable he was at the time of the alleged crime and that the disruptions from his medications were interfering with his ability to know and understand his responsibilities. He argued that with the disruptions, he had no ability to be "coherent" and could not knowingly partake in any part of society. *Id*. at 8. He wanted to show that he tried to communicate with the VA for help to maintain stability.

The trial court then responded, "The *only* thing you need to know about in this case is that *you had a prior responsibility to report*. That's it. *That's the only knowing thing that's an issue in this case at all*." *Id*. at 9 (emphasis added). Thus, the trial court incorrectly told Snider the only thing he had to know was that he had a prior responsibility to report, not that his failure to comply with the requirements at the time of the incident also had to be knowing.

Snider went on to point to the charging document where the prosecutor had alleged he "did knowingly fail to comply." *Id*. at 10. Snider then argued that the element at issue was that he acted knowingly and that diminished capacity would negate his knowledge because of "mishaps" with his medication to the point that he could not take care of himself. *Id*. at 11. The trial court judge then correctly stated

6

*State v. Snider*, No. 99310-6
Whitener, J. (dissenting)

that the State had properly identified the elements in the charging document. However, the judge then immediately incorrectly stated, "The mental state here requires mental state of knowledge, knowledge of the responsibility to register. That's the only mental state that's an issue here I can think of." *Id*. at 13. The trial court did not indicate that the State had to prove that Snider's failure to comply at the time of the incident also had to be knowing.

In regard to an expert witness who would discuss Snider's mental health diagnoses, the court went on to say,

> But the expert testimony must logically and reasonably connect the defendant's alleged mental condition and assert an inability to perform [sic] mental state required for the crime charged. In other words, it has to show that the bipolar or whatever the diagnosis there may have been interfered with the ability to form the mental state, which is knowledge, of the crime charged, which is knowledge of the responsibility to register. *That is the only thing at issue in this case.*

*Id*. (emphasis added). But again, the trial court's information to Mr. Snider was incorrect because the knowledge element does not only apply to knowledge of the responsibility to register but also to, as Snider was arguing, compliance with the statute at the time of the incident. Snider sought to present the evidence not to show that he was unaware of his general responsibility to register but, rather, that due to the deterioration of his mental health, he could not *knowingly* fail to comply because at that time he could not form the mens rea, knowing.

*State v. Snider*, No. 99310-6
Whitener, J. (dissenting)

After the court denied Snider's motion for a two-week continuance[1] to seek documents from the VA, Snider sought clarification from the court as to the ruling. Snider indicated, "I'm not understanding how a mental disorder is not relevant to the knowledge of a particular act." *Id*. at 20. The court stated that Snider had to show the court "[h]ow the mental disability interferes with the ability to know the registration requirement. That's the issue." *Id*.

The trial court judge then downplayed Snider's struggle with mental illness saying, "Your articulation today is someone who certainly knows where they are. I have no doubt in my mind you know exactly where you are. . . . And you still have the same disability you had some time ago . . . . Do you see what I'm getting at?" *Id*.[2] The trial court then stated, "It's not whether or not you have mental disability or mental issues that you're trying to deal with; that's not the issue. The issue is how does that impact your ability to know whether or not you're required to register . . .

---

[1] Although not specifically before us, I wish to express my disagreement with this ruling. Snider correctly explained the law and mens rea in this case and sought time to get records that he alleged would allow him to identify expert witnesses who would testify to the disruption in his medication and how that disruption affected his ability to form the requisite mens rea, knowledge, in this case. This is *exactly* what the diminished capacity defense requires, and the court should have allowed Snider the two-week continuance as he was incarcerated and having difficulty obtaining the records from the VA. *See* VRP at 27-28.

[2] The judge's comments appear to show a fundamental misunderstanding of mental illness. Mental illness is not linear; and although Snider was able to correctly articulate the law and represent himself that does not mean that he would have been able to form the requisite mens rea *at the time of the crime*. Snider's mental health at the time of the hearing when, as he explains, he was medicated, housed, clothed, and fed, has no bearing on his mental state at the time of the alleged crime and whether at that time he was able to form the requisite knowledge.

8

*State v. Snider*, No. 99310-6
Whitener, J. (dissenting)

." *Id*. at 20-21. This articulation fundamentally misunderstands the defense of diminished capacity and the evidence Snider sought to obtain. It fundamentally disregards the validity of Snider's mental health struggles and incorrectly conflates how Snider presented on the day of trial with how Snider may have presented at the time of the incident. Snider was not seeking the VA records to show that he had been diagnosed with mental illness. He sought the records from expert witnesses whom he had worked with at the VA who could testify to disruptions Snider had from his medications that interfered with his ability to form the requisite knowledge element.

Snider then explained that he was not facing the same struggles that he had at the time of the charged crime because he was in jail, so he was clothed, housed, fed, and taking proper medications. *Id*. at 21-22. This combination allowed him to be "coherent" in front of the court in his own defense. *Id*. at 23.

Later, while discussing the State's motion in limine to exclude the diminished capacity defense, the court went on to explain that the State still had the burden to prove that "the defendant knew" and that "he had the responsibility to register". *Id*. at 24-25. In granting the State's motion the judge stated,

> Diminished capacity defense is something different than that, however. It's telling us that if he doesn't have the mental—there's a problem mentally that would show us that he doesn't have the ability to have the knowledge, doesn't have that because of whatever happened in his mental capacities at this point or at the point being charged, then that is a defense available.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Snider*, No. 99310-6
Whitener, J. (dissenting)

> To this point I still do not have that connection being made. There is no expert that has been named. There have been no reports turned over at all. It has been quite some time.
>
> I see a lot of subpoenas issued. I don't know if they were all issued by the defense; nevertheless, there were quite a few subpoenas issued. None of that leads [sic] support to the idea or to the argument that diminished capacity defense should be allowed, as once again, there is no particular mental disorder that interferes with the defendant's ability to know he has a responsibility to report.
>
> That is the only element of the crime as far as I can see that's an issue on this issue. Diminished capacity defense will not be allowed.

*Id*. at 25.

While I agree that at this point in the proceeding Snider had not made the requisite showing of experts and evidence to support the affirmative defense of diminished capacity, Snider wanted a continuance to get that evidence. He wanted to get the records that he alleged would show the identity of the expert witnesses, explain his mental diagnoses, and show the problems he was having with his medications at the time of the incident and how that disruption interfered with his ability to form the mens rea to act knowingly. *See id*. at 7-8. Thus, Snider correctly identified the mens rea of the case, and he was arguing that his mental illness interfered with his ability to knowingly comply with the requirements of the statute. Nonetheless the judge, under an incorrect articulation of the mens rea requirement and the requirements for a diminished capacity defense, told Snider that he had not made the connection between his alleged evidence and the mens rea in the case,

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Snider*, No. 99310-6
Whitener, J. (dissenting)

denied his request for a continuance, and granted the State's motion to exclude any evidence of diminished capacity. This discussion again emphasized to Snider that Snider's correct understanding of the law was incorrect. Although Snider repeatedly alleged that the disruption in his medication made it so he could not form the requisite knowledge at the time of the incident, the court at numerous times misinformed him that he could not establish a connection between his mental illness and the ability to form the requisite knowledge.

When discussing witnesses, Snider explained that because of his incarceration he was having difficulties getting the records from the VA and that the records would identify a psychologist and a psychiatrist as expert witnesses. *Id*. at 27. He explained he could not get the records or speak to the experts prior to the hearing because of the delays at the VA. *Id*. While we cannot know exactly what the expert witnesses would have testified to, Snider's diminished capacity defense required expert testimony, and if the experts' testimony was consistent with Snider's allegation, then Snider likely could prove diminished capacity.

However, the court again informed Snider that "[i]t's whether or not a specific mental health issue, specific mental health condition interfered with your—create[d] the inability for you to form the proper mental state, which is knowledge of the duty to report. That's it." *Id*. at 28. Here again, the court was incorrectly limiting the mens rea to knowledge of the duty to report and misunderstanding Snider's diminished

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

capacity argument. The court continued limiting the mens rea to the duty or responsibility to report and concluded, "The [S]tate has the burden of proof here. But before this evidence gets before the jury there has to be an offer showing that you did not know that you had the duty to register. And I do not have that." *Id.* at 28-29. But again, Snider was not challenging knowledge of the duty to register, he was challenging that he could not form the requisite mens rea, knowledge, for the failure to comply because of the disruption in his medication.

The majority analogizes the judge's descriptions of the knowledge requirement in this case to the false imprisonment element that the defendant "'knowingly restrained'" the victim. Majority at 14 (internal quotation marks omitted) (quoting *State v. Warfield*, 103 Wn. App. 152, 157, 5 P.3d 1280 (2000)). The majority concludes that the four definitional requirements ("'(1) restricting another's movements; (2) without that person's consent; (3) without legal authority; and (4) in a manner that substantially interferes with that person's liberty'") are not distinct elements of the crime but make up the element of "knowingly restrains" and the judge need not explain them all. *Id.* (quoting *Warfield*, 103 Wn. App. at 157).

While I agree with the majority that a judge need not explain every fact needed to prove an element of the crime, the issue in the present case is not that the judge did not explain every fact that the State would need to prove. The issue in this case is that the judge explicitly misinformed the defendant of the elements the State must

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Snider*, No. 99310-6
Whitener, J. (dissenting)

prove by limiting what the State needed to prove to *only* that Snider had knowledge

that he had a duty to report or knowledge of the requirements of his duty to report

and not that the failure to comply must also be knowing. A more apt "knowingly

restrains" analogy to this case would be affirmatively telling the defendant that to

prove knowing restraint, the State must *only* prove that the defendant had knowledge

that the person was restrained, when in actuality the State must also prove knowledge

that the restraint was without consent, without legal authority, and in a manner that

interferes substantially with one's liberty.

By its plain text, RCW 9A.44.132, does *not* require as an *element* of the crime

that the person have knowledge of the duty to register nor that they had knowledge

of the registration requirements. It requires as an *element* that the person "knowingly

fails to comply with any of the requirements." Knowledge of the duty to report and

of the requirements of reporting are necessary to prove a knowing failure to comply,

but they are not all that the State must prove. The State must also prove, as the

majority concludes, that the defendant is "aware that their particular circumstances

give rise to a particular requirement under RCW 9A.44.130." Majority at 13. In

addition, the State must prove that the actual *failure to comply* was *knowing*.

There are many circumstances in which a person may be restrained but not

meet the definitional requirements of "knowing restraint" for unlawful

imprisonment. The same occurs here. Snider does not dispute that he had knowledge

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of a duty to register and of the general requirements. He instead alleges that consistent with a diminished capacity defense, he intended to present evidence that he could not knowingly fail to comply with the registration requirements because he was unable to form the requisite mens rea, knowledge, because his mental illness and deterioration made it so he was not able to knowingly do anything at the time of the alleged crime.

A person can know generally of the requirements of reporting and still be unable to knowingly comply with those requirements. It is a leap to say that a person who cannot participate in society or engage in basic human functions (such as personal hygiene or transportation) knowingly failed to comply with registration requirements simply because he knew he had a duty to report and knew generally what those requirements involve. But the judge in this case repeatedly told Snider his understanding of the law was incorrect when it was not. Accordingly, I would hold that the trial court judge in this case affirmatively misinformed Snider as to what the State must prove for the element of "knowingly fails to comply."

II. Under the totality of the circumstances, Snider's plea was not knowing, voluntary, and intelligent because the plea colloquy did not remedy the repeated misinformation

In determining whether a plea is knowing, voluntary, and intelligent, we look to the totality of the circumstances. *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). Generally, a charging document that accurately describes the elements

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of the crime creates a presumption that a plea was knowing, voluntary, and intelligent. *Bousley*, 523 U.S. at 618. However, one can overcome this presumption with a showing of misinformation as "[a] guilty plea cannot be knowing and intelligent when the defendant has been misinformed about the nature of the charge." *State v. R.L.D.*, 132 Wn. App. 699, 705, 133 P.3d 505 (2006) (citing *Bousley*, 523 U.S. at 618).

I agree with the majority that the charging document accurately conveyed the elements of the crime in this case and, therefore, the plea is presumed to be constitutionally valid. *See* majority at 17. However, because I conclude that the trial court repeatedly misinformed Snider as to what the State needed to prove to show that he knowingly failed to comply, I would hold that Snider has overcome this presumption. Accordingly, I would hold that Snider's plea was not knowing, voluntary, and intelligent, and would reverse his conviction.

Snider was clear that his defense strategy was to present evidence of diminished capacity to negate the mens rea requirement within "knowingly fail[ed] to comply." As discussed above, the trial court repeatedly and incorrectly explained to him that his understanding of the element was incorrect. That the trial court and Snider agreed that the charging document correctly conveyed the elements of the crime does not negate the trial courts repeated incorrect explanations of what that element meant.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The majority contends that "clear advisements during the plea colloquy were adequate to correct any potential misunderstanding." Majority at 17. I disagree. This statement assumes that Snider, representing himself, did not understand what the judge spent the entire morning incorrectly explaining to him: that "knowingly fails to comply" means that the State has to prove *only* that he knew of the duty to register and that the alleged evidence that Snider sought to present with a diminished capacity defense (that the disruption in his medication made it so he could not form the requisite mental state of knowledge) was insufficient. Using the correct wording of the element during the colloquy does not remedy the fact that just minutes earlier the judge misinformed Snider as to the meaning of the required mental state element.

Snider did correctly understand the element at the outset of pretrial motions. He repeatedly correctly explained the element, and he repeatedly was informed each time by the judge that he was incorrect on his understanding of what the "knowingly fails to comply" element language meant. Accordingly, I would hold that the plea colloquy in this case, although it accurately described the elements, did not overcome the misinformation provided by the judge. The misinformation provided by the judge was about the nature of the knowledge element and whether the facts as alleged by Snider negated the mens rea in this case.

The majority also contends that Snider's adding the word "knowingly" to his plea agreement "provides a particularly persuasive indicator that the knowledge

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

element was accurately conveyed." *Id*. But it is a dangerous precedent to set that language mirroring the statute in a plea form is persuasive proof that the defendant understood the elements of the crime after being incorrectly told what that element means. Further, it is speculative to assume that Snider wrote the language on the plea agreement (although he did initial it), and it is speculative to assume whether it was Snider's idea to add it or whether he was told by someone else that the language in the plea statement had to mirror the statutes. In fact, it is pure speculation as to what the addition of the word "knowingly" on his plea agreement means.

Because Snider pleaded guilty almost immediately after being repeatedly misinformed during the entire proceeding as to the meaning of the element of "knowingly fails to comply," I would hold that he has overcome the presumption that his plea was not knowing, voluntary, and intelligent based on a correct charging document. In addition, I would hold that the proper recitation of the elements during the plea colloquy was not sufficient to cure the affirmative misinformation in this case as to the meaning of the disputed element. Accordingly, I would hold that Snider's plea was not knowing, voluntary, and intelligent.

CONCLUSION

I would reverse the Court of Appeals and vacate Snider's conviction. The judge in this case affirmatively misinformed Snider of the mens rea requirement in

17

*State v. Snider*, No. 99310-6
Whitener, J. (dissenting)

this statute and, as a result, Snider pleaded guilty. Accordingly, I would hold that

Snider's plea was not knowing, voluntary, and intelligent.

I respectfully dissent.

_____
Whitener, J.

_____
Owens, J.

_____
Gordon McCloud, J.